2020 IL App (1st) 191050-U

FIFTH DIVISION
Order filed: August 7, 2020

No. 1-19-1050

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* | ) | Appeal from the |
| | ) | Circuit Court of |
| BEN ASHKAR, | ) | Cook County. |
| | ) | |
|     Petitioner -Appellee, | ) | |
| | ) | No. 2018 OP 77060 |
| and | ) | |
| | ) | |
| MICHELLE LESZKIEWICZ, | ) | Honorable |
| | ) | Raul Vega, |
|     Respondent-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE HOFFMAN delivered the judgment of the court.
Justices Rochford and Delort concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the entry of an order of protection where the circuit court's finding that the respondent harassed the petitioner was not against the manifest weight of the evidence.

¶ 2    The respondent, Michelle Leszkiewicz, appeals from the order of the circuit court of Cook

County granting an order of protection against her that protected the petitioner, Ben Ashkar, and a

dog known as "Biscuit." The respondent argues that the circuit court's finding that she harassed the petitioner was against the manifest weight of the evidence. For the reasons that follow, we affirm.

¶ 3    The following facts are taken from the common law record and the report of proceedings of the circuit court's hearing on the plenary order of protection.

¶ 4    On September 12, 2018, the petitioner filed a petition for order of protection, alleging the petitioner and the respondent have or have had a dating or engagement relationship. The petition further alleged:

"[The respondent] calls and texts me over 50 times per day from unknown phone numbers. She shows up to my home & I've had to have the police physically remove her 3 times. She broke into my house and stole keys to my condo in order to try to steal my dog."

¶ 5    The circuit court entered an emergency order of protection and continued the matter. In December 2018, the circuit court granted the petitioner leave to amend the petition, extended the emergency order of protection to April 22, 2019, and set the matter for a status hearing. The respondent moved to reconsider, arguing that the circuit court should expedite a hearing to allow her to retrieve her pet, settle wedding costs, and "make official" the cancellation of the wedding by the petitioner.

¶ 6    On April 22, 2019, the circuit court conducted a hearing on the petition. The petitioner testified that he owns a home on West Belmont Avenue in Chicago. He and the respondent previously dated, were engaged, and lived together. Their relationship ended on Memorial Day 2018. The petitioner testified:

> "I was not trying to communicate with her, but I getting [*sic*] texts and phone calls and emails all day. I blocked her number, changed my number for a while. The more troubling thing was she kept showing up at my house."

The petitioner further testified that the respondent left July 1, 2018, and "showed up unannounced, uninvited" three out of four consecutive weekends. She was in a common area, the hallway, and was not in his unit. He called the police, who removed her from the hallway and walked her outside. On September 8, 2018, the respondent came to the petitioner's unit and entered with a spare key. The police removed her, but she returned at 2:30 am and was removed again. On September 12, 2018, the petitioner filed his petition for an order of protection. When he returned home, someone had broken into his house and had taken some items including his dog. He filed a police report, and the respondent's father took the dog to the police who returned it to the petitioner. According to the petitioner, he purchased the dog.

¶ 7    The petitioner also testified that after the emergency order of protection was entered, the respondent left him a voice message at 1:30 a.m. on January 1, 2019. He received several more calls from the respondent from different numbers. He knew the calls were from the respondent because he answered one call at 1:50 a.m. and recognized her voice. He stopped answering his phone but had seven more missed calls between 2 and 4 a.m.

¶ 8    On cross-examination, the petitioner admitted that, on September 6, 2018, he was charged with domestic battery and spent a night in the Cook County Jail. He added that the charges were dropped. The petitioner denied that he bought the dog as a gift for the respondent.

¶ 9    The respondent testified that she denied all the allegations of the petition. Regarding the allegation that she called petitioner 50 times per day, she stated that she only called "in a normal

way like anyone else would." She testified that she never entered the petitioner's home uninvited and was never removed by the police. She denied leaving voice messages for the petitioner.

¶ 10    At the conclusion of the testimony, the circuit court held that, "based on all of that testimony, I think that it's more likely than not that he is entitled to this order of protection and that he has been abused in a sense of harassment and interference and stalking." The circuit court entered a plenary two-year order of protection protecting the petitioner and the dog. The respondent filed a notice of appeal on May 21, 2019.

¶ 11    On appeal, the respondent contends that (1) the evidence was insufficient to sustain a finding of abuse, and (2) she was denied equal protection and due process because the circuit court did not appoint counsel to represent her.

¶ 12    Initially, we note that the petitioner, as appellee, has not filed a brief in this court. However, because we can decide the claimed errors without the aid of an appellee's brief, we will proceed to decide the merits of this appeal. See *Leach v. Department of Employment Security*, 2020 IL App (1st) 190299, ¶ 21 (citing *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976)).

¶ 13    The respondent first contends that the evidence was insufficient to support the circuit court's order. She argues that there was no evidence of harassment within the meaning of the Illinois Domestic Violence Act of 1986 (Act) (750 ILCS 60/101 *et seq.* (West 2018)).

¶ 14    Proceedings to obtain an order of protection are civil in nature and governed by the preponderance-of-the-evidence standard. *Maurissa J. B. v. Ingrida K.*, 2019 IL App (2d) 190107, ¶ 41 (citing *Best v. Best*, 223 Ill. 2d 342, 348 (2006)). We will reverse a finding of abuse only if

the circuit court's decision is against the manifest weight of the evidence. *Id.* "A decision is against the manifest weight of the evidence only when an opposite conclusion is clearly apparent or when the court's findings appear to be unreasonable, arbitrary, or not based upon the evidence." *Id.* (citing *In re Marriage of Romano*, 2012 IL App (2d) 091339, ¶ 44)

¶ 15    The Act provides that if a court finds that the petitioner has been abused by a family or household member, an order of protection shall issue. 750 ILCS 60/214(a) (West 2018); see also *Landmann v. Landmann*, 2019 IL App (5th) 180137, ¶ 14 ("[T]he central inquiry is whether the petitioner has been abused.") The Act defines abuse as:

> " '[P]hysical abuse, harassment, intimidation of a dependent, interference with personal liberty or willful deprivation but does not include reasonable direction of a minor child by a parent or person in loco parentis." 750 ILCS 60/103(1) (West 2018).

The act further defines harassment as:

> " '[K]nowing conduct which is not necessary to accomplish a purpose that is reasonable under the circumstances; would cause a reasonable person emotional distress; and does cause emotional distress to the petitioner. Unless the presumption is rebutted by a preponderance of the evidence, the following types of conduct shall be presumed to cause emotional distress:
>
> * * *
>
> (ii) repeatedly telephoning petitioner's place of employment, home or residence;"
> 750 ILCS 60/103(7) (West 2018).

¶ 16    Here, the circuit court was presented with sufficient evidence to support its finding that the respondent abused the petitioner through harassment. The petitioner testified that the respondent

called him repeatedly, causing him to block her number and change his own. He further testified that, on one-particular evening, she telephoned him repeatedly leaving voice mail messages between 2 and 4 a.m. In addition, he testified that the respondent came to his residence uninvited on at least three occasions and had to be escorted away by the police. Although the respondent denied these allegations, whether to accept the testimony of one witness over another is a matter of credibility for the circuit court to determine. See *Best*, 223 Ill 2d at 350-351. We conclude that the petitioner's testimony was sufficient to support a finding of abuse.

¶ 17    The respondent argues that the petitioner's testimony was insufficient because he did not testify that he received the phone calls from the respondent at his home or place of employment. Section 102 of the Act provides "This Act shall be liberally construed and applied to promote its underlying purposes." 750 ILCS 60/102 (West 2018). Moreover, section 103 describes "repeatedly telephoning" a petitioner as the "type of conduct" that gives rise to a presumption of emotional distress. It would be contrary to the purposes of the statute to apply a hypertechnical reading of the statute to defeat the petitioner's clear testimony that the respondent called him repeatedly and during early morning hours. Therefore, we cannot conclude that the circuit court's findings were unreasonable, arbitrary, or not based upon the evidence. See *Maurissa J. B.*, 2019 IL App (2d) 190107, ¶ 41.

¶ 18    The respondent also contends that she was denied equal protection and due process because she was not appointed counsel to represent her during the proceedings.

¶ 19    The respondent first argues that she was denied equal protection because she is similarly situated to respondents in order of protection proceedings under section 2-25 of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-25 (West 2018)) who are entitled to counsel

under section 1-5(1) (705 ILCS 405/1-5(1) (West 2018)). An equal protection challenge fails if the party raising the issue fails to make a showing that she is similarly situated to the comparison group. *People v. Masterson*, 2011 IL 110072, ¶ 25. The Juvenile Court Act addresses matters involving the care and custody of minor children. See (705 ILCS 405/1-2 (West 2018) (purpose and policy)) There are no minor children involved in this case and no allegations involving the safety of minor children. Therefore, we conclude that the respondent's equal protection claim fails.

¶ 20     The respondent also argues that she is entitled to appointment of counsel as a matter of due process. The respondent cites no authority in support of this argument. Therefore, the respondent has forfeited the argument. See *Palm v. 2800 Lake Shore Drive Condominium Assoc.*, 401 Ill. App. 3d 868, 881 (2010) (citing Il. S. Ct. R. 341(h)(7) (eff. May 25, 2018)). Forfeiture aside, there is no merit to the respondent's claim. The due process clause protects individuals from actions by the State, not actions by individuals. See *In re Marriage of Schmidt*, 241 Ill App 3d 47, 48 (1993) (citing *Rosewell v. Hanrahan*, 168 Ill. App. 3d 329 (1988)). Here, the action was initiated by the petitioner without involvement by the State. Accordingly, this claim must fail.

¶ 21     For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

¶ 22     Affirmed.